## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

ALAN STEELE.,

     Plaintiff,

     v.

OMAHA TRUCK CENTER D/B/A TRUCK
CENTER COMPANIES,

     Defendants.

Case No. 23-1209-HLT-BGS

## ORDER DENYING MOTION TO INSPECT PREMISES
## AND/OR FOR LEAVE TO DEPOSE PLAINTIFF AGAIN

NOW BEFORE THE COURT is Defendant's "Motion to Inspect Premises and/or for Leave to Depose Plaintiff Again Before Trial to Get an Update on his Condition." (Doc. 62.) For the reasons set forth herein, Defendant's request to inspect Plaintiff's residence(s) is **DENIED** while its request to depose Plaintiff a second time is also **DENIED**.

## FACTUAL BACKGROUND

This case results from a motor vehicle accident occurring in June 2023 in Butler County, Kansas. The accident involved a van operated by Plaintiff and a van operated by Jackson Grimm, which was owned by Defendant Omaha Truck Center, Inc. Plaintiff alleges that Grimm negligently operated Defendant's van while in the course and scope of his employment with Defendant. Plaintiff also alleges that Defendant was negligent in its hiring, training, supervision, and/or retention of Grimm. Defendant has primarily alleged the defenses of comparative fault and failure to mitigate damages. The case is in federal court on the basis of diversity jurisdiction.

In the present motion, Defendants seeks permission to inspect "the premises where Plaintiff has resided and will continue to reside for the foreseeable future following the accident at issue in order to photograph the premises during a walkthrough inspection to gain a better understanding of

the layout of the premises . . ."  (Doc. 62, at 1.)  Defendant also seeks leave to depose Plaintiff for a second time, "nearer in time to trial to get an update on his condition and circumstances."  (*Id.*)  Plaintiff generally opposes these requests.

Regarding the request for inspection, the parties have met the conferral requirements of D. Kan. 37.2.  The parties also engaged in a telephone conference with the Court, as required by D. Kan. Rule 37.1(a), on November 4, 2024.  At that time, the Court entered a deadline of November 18, 2024, for the filing of any resulting motion.  As such, the present motion was timely filed.  The Court has no recollection of the parties discussing Defendant's request to depose Plaintiff a second time during this telephone conference.  Even assuming the issue was not addressed during the Rule 37.1 conference, the Court will examine the request on its substantive merits rather than deny the request on technical or procedural grounds.

In support of the motion, Defendant refers to a lifecare plan report by Plaintiff's expert Cori Ingram that includes a lifecare plan estimated at a cost of $1,592,480.  (Docs. 62, at 2 and 62-1.)  Ms. Ingram testified at her deposition that Plaintiff informed her that his house, which is a ranch, is accessed by six stairs.  (Doc. 62-2, Ingram Depo, at pg. 75-76.)  Plaintiff indicated he was able to navigate the stairs, his neighbors were mowing his yard, and he would set chairs around the house so he could sit while performing tasks.  (*Id.*, at 57-58.)  Plaintiff also told Ms. Ingram that he intended to stay at his parent's house beginning in the end of October 2024 while they relocated to Arizona for six months.  (*Id.*,  at 59-60.)  Plaintiff told Ingram he was concerned about shoveling the driveway and navigating the stairs at his current home.  (*Id.*)

Defendant indicates one of its "challenges … in preparing for trial is the changing nature" of Plaintiff's claims caused by his continued improvement, which, according to Defendant, "became obvious" during Ingram's deposition.  (Doc. 62, at 2-3.)  For instance, Ingram removed certain recommendations as no longer necessary following a second interview with Plaintiff in October

2024 (her initial interview, that was the basis of her April 2024 lifecare plan, occurred in February 2024). (Doc. 62-2, at 47-50, 56-58.) Ms. Ingram testified that after her second conversation with Plaintiff as well as conversations with his doctors, she intended to remove certain recommendations from her report and draft an updated report three months in advance of trial. (*Id.*, at 73, 112-13.) The proposed changes would result in the lifecare plan being reduced by several hundreds of thousands of dollars. (*See* Doc. 62, at 3-4; Doc. 62-2, at 60-61, 77-80, 118-20.) The amount of the plan would also be reduced by Plaintiff no longer needing certain medication and certain assistive/adaptive devices, including a wheelchair, scooter, cane, toilet riser, shower bench, and handheld shower nozzle. (Doc.62-1, at 14; Doc. 62-2, at 148-49.)

According to Defendant, "Plaintiff filed his lawsuit before he had reached maximum medical improvement. He was evaluated by his experts before he had fully recovered from his injuries and even now, he continues to progress." (Doc. 62, at 4.) The Court notes that this is not unusual for such cases. Defendant continues that Plaintiff has "improved in many respects since those prior evaluations," for instance, he has "moved from wheelchair, to walker, to cane (most recently ambulating 200 yards with a cane)." (*Id.*) Plaintiff has also indicated his sleep is markedly improved. (*Id.*, at 5; Doc. 62-2, at 104-05.)

As a result of the above, Defendant requests an Order allowing it "to inspect the two residences … and to photograph the exterior and interior layout of each residence during a walkthrough of each property," which defense counsel states would be done at a time convenient for Plaintiff and in a limited manner. (Doc. 62, at 5.) According to Defendant, the "inspections are appropriate in this case given the claims advanced by Plaintiff and given the changing nature of Plaintiff's condition in order to have a fair opportunity to prepare the case for trial." (*Id.*)

Defendant also requests leave, "in the interest of fairness," to conduct a second deposition of Plaintiff in advance of trial. Defendant contends this is necessary "to get an update on

[Plaintiff's] condition" because he "has continued to improve over time and his circumstances have changed over time because he has not fully recovered from the injuries he sustained in the accident at issue." (*Id.*, at 7.) Defendant continues that it "should not be unfairly surprised at trial and Defendant needs the ability to fully understand the claims being made, the physical limitations being claimed, and the condition that [Plaintiff] will be in near in time to trial." (*Id.*) Plaintiff generally objects to Defendant's requests as irrelevant, unnecessary, and an invasion of privacy. The Court will address each of these requests in turn.

## ANALYSIS

### I.     Inspection.

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. The rule states that parties

> may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

*Id.*

Pursuant to Fed. R. Civ. P. 34(a), "[a] party may serve on any other party a request within the scope of Rule 26(b): (2) to permit entry onto designated land or other <u>property possessed or controlled by the responding party</u>, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." (Emphasis added.) In deciding whether to allow a contested request for an inspection, a court weighs "the degree to which the proposed inspection will aid in the search for truth" against the "burdens and

dangers created by the inspection." *Morris v. Cabela's*, No. 10-2559-EFM, 2011 WL 2516904, at *1 (D. Kan. June 23, 2011).

During the pre-motion telephone conference the Court conducted with the parties on November 4, 2024, the Court expressed concern as to whether Defendant could establish the relevance of the inspections, whether Defendant would be unable to establish that Plaintiff "possessed or controlled" his parents' home, and expressed concerns regarding the scope of the requested inspections. As to relevance, Defendant contends the inspections are "appropriate" in light of Plaintiff's claims and "the changing nature of Plaintiff's condition in order [for Defendant] to have a fair opportunity to prepare the case for trial." (Doc. 62, at 5.) Defendant contends that as a result of Plaintiff's improved medical condition, the lifecare plan "is going to be modified and changed before trial and defense counsel would like to appreciate the layout of the two homes where Plaintiff resides at six-month intervals in relations to the claimed damages related to the need for assistance with activities of daily living and interior and exterior home maintenance." (*Id.*, at 5-6.) Defendant continues that it needs "to understand [Plaintiff's] living quarters to fairly evaluate claims for needed interior and exterior home maintenance and mobility assistance," particularly in light of Plaintiff's physical improvement. (*Id.*, at 6.)

Plaintiff responds that the requested inspections are "unnecessary," irrelevant, and constitute "a fishing expedition by defense counsel." (Doc. 63, at 3.) Plaintiff argues that "there is limited value to Defendant conducting a walkthrough inspection of Plaintiff's home" because the installation or lack of assistive devices recommended by "Plaintiff's designated expert and medical care providers" is not an indication of "whether he lacks or maintains a demonstrated need for such devices … ." (*Id.*, at 4.)

On the issue of exterior home maintenance, the Court finds that Defendant has clearly failed to meet its burden as to the requested inspection. Defendant may view and evaluate the exterior of

the residences without leave of court by merely accessing Google Earth images or taking photographs of the homes from public streets and/or sidewalks.

As to interior home maintenance, Defendant raises concerns as to "any interior home maintenance that requires [Plaintiff] using a ladder or bending down low." (*Id.* (citing Doc. 62-2, at 132-33).)  In the Court's purview, the need to use a ladder or "bend down low" would potentially encompass a variety of tasks from changing a lightbulb to retrieving an item from a lower cabinet or cupboard.  The Court fails to see – and Defendant has failed to explain – how such activities are specific to a particular home layout.  Rather, such activities are typical for the ownership, occupancy, and maintenance of virtually any home, regardless of its layout.  As such, an inspection of Plaintiff's residence(s) will not aid in the "search for truth" regarding these issues.  *Morris*, 2011 WL 2516904, at *1.

Defendant also raises concerns as to Plaintiff's purported need for "various assistive or adaptive devices "including a manual wheelchair, electric scooter, cane, toilet riser, shower bench, and handheld nozzle … ." (*Id.* (citing Doc. 62-1, Life Care Table, at 14).)  The Court does not understand – and again, Defendant has failed to explain – a correlation between Plaintiff using or needing such assistive living devises and an inspection of his residence(s).  Additionally, this case does not present the situation wherein it is being alleged that Plaintiff's home needs to be renovated, such as to make doorways wider or to bring a bathroom down to the ground level.  Finally, Defendant "had ample opportunity" to obtain whatever information it now seeks regarding the layout of the residence(s) through written discovery or at Plaintiff's first deposition, but failed to do so.  *See Rogers v. English*, No. 19-3145-JAR-ADM, 2022 WL 2290537, at *6 (D. Kan. June 24, 2022).

All things considered, Defendant has not met the burden to be allowed leave to inspect Plaintiff's residence(s).[1] This portion of Defendant's motion is, therefore, **DENIED**.

## II.    Second Deposition of Plaintiff.

Defendant next asks for leave to conduct a second deposition of Plaintiff, "in the interest of fairness," in order "to get an update on his condition and his circumstances in advance of trial." (Doc. 62, at 7.)  Pursuant to the Federal Rules of Civil Procedure, a party must receive permission from the court, "and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2)," if "the deponent has already been deposed in the case …."  Fed. R. Civ. P. 30(a)(2)(A)(ii).

"The propriety of deposing someone a second time addresses the discretion of the court" and generally will not be allowed "absent some showing of a need or good reason for doing so." *Cuthbertson v. Excel Indus. Inc.*, 179 F.R.D. 599, 604 (D. Kan.1998) (citations omitted); *Ice Corp. v. Hamilton Sundstrand Corp.*, No. 05-4135, 2007 WL 1590845 (D. Kan. May 20, 2007) (citing *Cuthbertson*).  Generally stated, "[s]cheduling a second deposition of the same person without a showing of [reason] will generally support a finding of annoyance and undue burden or expense." *Cuthbertson*, 179 F.R.D. at 605.

The scope of discovery is governed by Fed. R. Civ. P. 26(b)(1), which states that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Thus, the Court must consider the concepts of both relevance and proportionality when determining whether to permit contested discovery.

Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 L.Ed.2d 253 (1978).  As to

---

[1] Because Defendant has not established its burden regarding the request to inspect, the Court will not analyze whether Plaintiff has the requisite "possession or control" of his parents' residence.

proportionality, the Court considers "the importance of the issues at stake in the action, the amount

in controversy, the parties' relative access to relevant information, the parties' resources, the

importance of the discovery in resolving the issues, and whether the burden or expense of the

proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Courts "**must** limit the

frequency or extent of discovery" when

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C) (emphasis added).

Plaintiff was initially deposed on July 25, 2024, but, according to Defendant, it

> should not be unfairly surprised at trial and Defendant needs the ability to fully understand the claims being made, the physical limitations being claimed, and the condition that Mr. Steele will be in near in time to trial. His condition had continued to improve over time, which is why Plaintiff's lifecare expert testified that she intends to update her report 3 months before trial after checking back in with Mr. Steele.

(Doc. 62, at 7.) Plaintiff, on the other hand, argues that a second deposition would be "unduly

burdensome and cumulative," noting that Courts "'generally disfavor repeat depositions.'" (Doc.

63, at 6 (quoting *Dixon v. Certainteed Corp.*, 164 F.R.D. 685, 690 (D. Kan. 1996).) Plaintiff argues that

Defendant's request

> should be viewed as an attempt to harass and inconvenience the plaintiff, as well as an attempt to prolong the discovery phase of trial. To date, defendant has forced [Plaintiff] to undergo a neurological medical evaluation, an orthopedic medical evaluation, and a lengthy deposition. Defendant contends that it must, just four months following the original deposition, conduct a subsequent deposition to make clear the extent of Plaintiff's injuries and current health status.

(*Id.*)

8

Plaintiff continues that "it is unclear what additional medical diagnostic and treatment testimony that defendant seeks to illicit that was not previously revealed in the orthopedic medical evaluation, neurological medical evaluation, or the initial deposition of Mr. Steele … ."  (*Id.*) Plaintiff asserts that Defendant's stated purpose for the deposition would be accomplished through Defendant's cross-examination of Plaintiff at trial.  (*Id.*)

As to Defendant's argument that a second deposition would allow it to question Plaintiff regarding the layout of the homes in which he resides, Plaintiff argues this information is both irrelevant and available through "much more cost-effective and time conserving measures" available to Defendant.  (*Id.*, at 7.)  Plaintiff suggests Defendant can see or photograph the exterior of the homes from a public vantage point, "use internet programs such as Google Earth or Apple Maps to view the exteriors of both properties," and "may utilize public access documents containing information about both properties to ascertain the information it seeks about the homes and their layouts."  (*Id.*)

Defendant acknowledges that second depositions are generally disfavored, but argues "the facts and circumstances in this case and fundamental fairness should cause the Court to conclude that permitting a second deposition of [Plaintiff] is warranted."  (Doc. 64, at 5.)  Defendant continues that it is

> attempting to get the information needed to defend against the pending claims and to adequately prepare for trial.  [Plaintiff] has been interviewed by experts retained by both sides that have examined him in this case.  The information provided has changed and evolved over time to reflect Plaintiff's improvement and recovery, which has him physically and medically in a much different place now than when he was initially interviewed by Plaintiff's experts.  Plaintiff's counsel has no choice but to acknowledge that this is the reality.  The deposition testimony cited in the motion makes that point abundantly clear.

(*Id.*)  Further, Defendant argues that requiring it to "blindly cross examine [Plaintiff] at trial without the benefit of being able to discover his new circumstances in advance of and near in time to trial" is

both "patently unfair to Defendant and unfairly prejudicial." (*Id.*)  According to Defendant, "[i]f this argument were sufficient then it could be used to resist all kinds of pretrial discovery under the notion that a party can always simply ask at trial." (*Id.*)

As discussed above, when analyzing the issue of proportionality, Rule 26(b)(1) directs the Court to consider (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of discovery in resolving issues in the case, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  On balance when considering these factors, the Court finds that Defendant has failed to establish that the request to depose Plaintiff a second time is proportional to the needs of this case. *See Rogers*, 2022 WL 2290537, at *7.

"[T]he first proportionality factor looks at whether the issues at stake implicate broader 'public policy spheres, such as employment practices, free speech, and other matters [that] may have importance far beyond the monetary amount involved,' or if the claims seek to 'vindicate vitally important personal or public values.'" *Lawson v. Spirit AeroSystems, Inc.*, No. 18-1100-EFM-ADM, 2020 WL 3288058, at *11 (D. Kan. June 18, 2020) (citation omitted).  The present matter is a personal injury case before the Court on the basis of diversity jurisdiction.  Although the claims and issues are certainly important to the parties, they do not implicate broader public policy concerns, such as alleged violations of constitutional or civil rights.  This factor therefore weighs against allowing the discovery. *Rogers*, 2022 WL 2290537, at *7 (citations omitted) (finding this factor weighs in favor of discovery where the plaintiff's constitutional right to humane conditions of confinement were at issue).

The second proportionality factor requires the Court to compare the cost of the discovery at issue to the amount in controversy. *Id.* (citing *Lawson*, 2020 WL 3288058, at *11).  The Court acknowledges that given the extensive damages claimed by Plaintiff resulting from his injuries, the

cost of an additional, limited deposition is minimal.  This factor weighs in favor of allowing the discovery.  That stated, "[t]he court is mindful … that 'monetary stakes are only one factor' that must be balanced against the other proportionality factors."  *Id.* (citation omitted).

The Court next considers the parties' relative access to relevant information.  "'In considering this factor, courts look for 'information asymmetry' – a circumstance in which one party has very little discoverable information while the other party has vast amounts of discoverable information.'"  *Id.* (citations omitted).  "'[T]he burden of responding to discovery lies heavier on the party who has more information, and properly so.'"  *Id.* (citing Fed. R. Civ. P. 26(b)(1) advisory committee notes to the 2015 amendment).  Clearly, Plaintiff has more access to information about his current medical condition and needs than Defendant does.  This factor thus weighs in favor of allowing a second deposition.

The fourth proportionality factor is the relative resources of the parties.  Plaintiff is an individual with limited resources while Defendant is a relatively large trucking company.  Because Defendant's resources clearly outweigh those of Plaintiff, this factor weighs against allowing a Defendants to conduct a second deposition.  The Court acknowledges, however, that Defendant would bear the majority of the costs incurred for the deposition.

The Court must next analyze the importance of this discovery to a resolution of issues in this case and whether the burden or expense of conducting the remaining discovery outweighs its likely benefit.  "In analyzing the importance of the discovery in resolving the issues in the case, the court looks to whether the discovery seeks information on issues 'at the very heart of [the] litigation.'"  *Lawson*, 2020 WL 3288058, at *14-15 (citation omitted); *see also Rogers*, 2022 WL 2290537, at *8 (citations omitted).  "'A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party

11

understands them.'" *Rogers*, 2022 WL 2290537, at *8 (quoting Fed. R. Civ. P. 26(b)(1) advisory committee notes to the 2015 amendment).

The final two factors weigh heavily against allowing the requested second deposition of Plaintiff. This is a personal injury case in which Plaintiff has not reached maximum medical improvement – a situation that is relatively common in personal injury cases. Simply stated, Defendant's motion fails to lay out a compelling reason why this particular Plaintiff should be subjected to a second deposition. Defendant does not explain how or why Plaintiff's situation differs from that of the countless other plaintiffs in federal court personal injury cases who have failed to reach maximum medical improvement. Allowing a second deposition in this situation – wherein Defendant has not clearly laid out a compelling reason for the requested discovery – would open the door to such second depositions becoming the routine in all similar personal injury cases.

Further, as discussed in detail above, Defendant has obtained significant information regarding Plaintiff's improved condition from Plaintiff's expert Ingram, who is submitting a supplemental report detailing the same. Defendant may also continue to request updated medical information from Plaintiff's medical providers. If such information was requested from Plaintiff via written discovery, Plaintiff has an ongoing duty to supplement his responses with updated medical records. Plaintiff also has a duty under Rule 26 to supplement all documents he intends to use in support of his claims.

On balance, re-deposing Plaintiff is disproportionate to the needs of the case pursuant to Rule 26(b)(1). The Court therefore **DENIES** this portion of Defendant's as well.

**IT IS SO ORDERED.**

Dated December 30, 2024, at Wichita, Kansas.

/s/BROOKS G. SEVERSON
Brooks G. Severson
United States Magistrate Judge